UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

KELLI S.[1],

                      Plaintiff,              Civil Action No.: 25-10724

v.                                 David R. Grand
                                   United States Magistrate Judge[2]

COMMISSIONER OF,
SOCIAL SECURITY,

                    Defendant.
_____/

## OPINION AND ORDER ON CROSS-MOTIONS
## FOR SUMMARY JUDGMENT (ECF Nos. 10, 12)

Kelli S. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions. (ECF Nos. 10, 12).

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Plaintiff is not disabled is not supported by substantial evidence. Thus, the Court will **DENY** the Commissioner's Motion for Summary Judgment **(ECF**

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The parties have consented to the undersigned exercising jurisdiction over all proceedings in this civil action pursuant to 28 U.S.C. § 636(c). (ECF No. 8).

**No. 12), GRANT** the Plaintiff's Motion for Summary Judgment **(ECF No. 10)**, and pursuant to sentence four of 42 U.S.C. § 405(g), **REMAND** this matter for further proceedings consistent with this Opinion and Order.

## II.     REPORT

### A.     Background

Plaintiff was 42 years old at the time of her application on March 26, 2022, and at 5'4" tall, weighed approximately 165 lbs.  (PageID.37, 80, 283).[3]  She completed high school, relying partially on special education through an Individualized Education Plan ("IEP").  (PageID.284).  Prior to the alleged onset of disability, Plaintiff worked at three fast food restaurants.  (ECF No. 59).  She now alleges disability resulting from "[e]pilepsy (last seizure 2020), migraines, memory issues, depression, over heat[ing] easily…" (PageID.80, 283).

After Plaintiff's application for DIB and SSI was denied at the initial level on December 5, 2022, and on reconsideration on February 28, 2023 (PageID.37, 79, 107), she timely requested an administrative hearing, which was held on March 20, 2024, before ALJ David Read.  (PageID.53).  Plaintiff, who was represented by attorney Wesley Lamey, testified at the hearing, as did vocational expert ("VE") Beth Crain.  (*Id.*).  In a written decision dated April 03, 2024, the ALJ found that Plaintiff is not disabled under the Act. (PageID.34-47).  On January 14, 2025, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner for purposes of this review.

---

[3] Standalone citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 7-1.

(PageID.21).  Plaintiff filed for judicial review of the final decision on March 14, 2025. (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical record, disability reports, and testimony as to her conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

**B.      The ALJ's Application of the Disability Framework Analysis**

Under the Act, DIB and SSI is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" in relevant part as the:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§423(d)(1)A), § 1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least

> twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).   "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."   *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following the five-step sequential analysis, the ALJ found that Plaintiff was not disabled under the Act.  At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 24, 2021, her alleged onset date.  (PageID.39).  At Step Two, the ALJ found that Plaintiff has the following severe impairments: "anxiety; depression; learning disorder; epilepsy; migraine headaches." (PageID.39).  At Step Three, the ALJ found that Plaintiff's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.  (PageID.40).

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), concluding,

> [C]laimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional

limitations: she can never climb ladders, ropes, or scaffolds, work at unprotected heights, or operate a motor vehicle; she can work in no more than moderate noise. She can perform simple, routine, and repetitive tasks, but not at a production rate pace (e.g. assembly line work); she can occasionally interact with coworkers and the public and tolerate occasional changes in task or demands.

(PageID.41).

At Step Four, the ALJ determined that, at all relevant times, Plaintiff has been unable to perform her past relevant work.  (PageID.45).  At Step Five, the ALJ concluded, based in part on the VE's testimony, that Plaintiff can perform a significant number of jobs that exist in the national economy.  (PageID.46).  As a result, the ALJ concluded that Plaintiff is not disabled under the Act.  (PageID.47).

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical record, function and disability reports, and testimony as to her conditions and resulting limitations.   Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### C.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).   The

phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id.* (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is 'more than a mere scintilla.'" *Id.* (internal citations omitted). Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health &*

*Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D.    Analysis**

In her motion for summary judgment, Plaintiff argues that the ALJ did not conduct a proper supportability and consistency analysis of Dr. Michael Brady's ("Dr. Brady") medical opinion; which the ALJ found unpersuasive. (ECF No. 10, PageID.722). If he had, she argues, then "a finding of more restrictive social limitations would have been appropriate, as opposed to the ALJ's current finding that [Plaintiff] could occasionally interact with co-workers and the general public." (ECF No. 10, PageID.726).[4]

Under the revised regulations applicable to claims, like Plaintiff's, filed on or after March 27, 2017, ALJs must evaluate the persuasiveness of medical opinions and "explain how [they] considered the supportability and consistency" of such opinions – the two "most important" factors – in their decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). As to the first factor (supportability), "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As to the second factor (consistency), "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be."

---

[4] Plaintiff also argues that the ALJ failed to properly evaluate her subjective symptoms. (ECF No. 10, PageID.726-29). Because the Court finds that remand is appropriate as to the ALJ's evaluation of Dr. Brady's opinion, it need not separately address Plaintiff's argument regarding her subjective complaints. However, on remand, to the extent the ALJ continues to find Plaintiff's subjective complaints "are not entirely consistent with the medical evidence and other evidence in the record," he should sufficiently explain his reasoning for that finding.

20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).   "The regulations require that the ALJ sufficiently articulate his reasoning for his persuasiveness findings." *Mistie W. v. Comm'r of Soc. Sec.*, No. 23-10696, 2024 WL 992160, at *3 (E.D. Mich. Mar. 7, 2024) (citing *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 902 (E.D. Mich. 2021)).

Dr. Brady, a Licensed Psychologist, evaluated Plaintiff on September 26, 2022, after she was "referred for an evaluation by the Department of Disability Determination Services to help determine eligibility for disability."  (PageID.573, 576).  Ultimately, Dr. Brady determined that "the mental status examination revealed abnormalities in concentration, memory, and calculation tasks," and that

> [Plaintiff's] ability to relate and interact with others, including coworkers and supervisors, is markedly impaired. Her distress could affect her interpersonal relationships in the workplace. Her ability to understand, recall, and complete tasks and expectations does not appear to be significantly impaired. Her ability to maintain concentration was moderately impaired. As a result of her emotional state she may often be distracted and her effectiveness and performance will likely be limited and slowed. Her ability to withstand the normal stressors associated with a workplace setting is moderately impaired.

(PageID.576).

The ALJ wrote that he was "not persuaded" by Dr. Brady's opinion because it "is not consistent with or supported by the medical and other evidence of record." (PageID.45).  However, in terms of an explanation for this finding, the ALJ offered only the following:

> Although the claimant reported significant social limitations, she has been able to interact appropriately with treatment providers and examiners, making good eye contact and behaving cooperatively.

8

(*Id.*).

Based on the above, Plaintiff argues that the ALJ's reasoning for discounting Dr. Brady's opinion is "superficial at best." (ECF No. 10, PageID.723). She argues that "the ALJ does not specify what objective record evidence the opinion is both unsupported by and inconsistent with" and that although the ALJ discussed the "objective evidence in support of [her] mental impairments, the ALJ "did not discuss whether the results support the opinion." The Court agrees that the ALJ's discussion does not permit the Court to meaningfully evaluate whether substantial evidence supports the ALJ's conclusion that Dr. Brady's opinion is unpersuasive.

There are multiple deficiencies in the ALJ's supportability and consistency analysis, the entirety of which is his statement that "[Plaintiff] has been able to interact appropriately with treatment providers and examiners, making good eye contact and behaving cooperatively." (PageID.45).[5]

First, this explanation appears to only address the aspect of Dr. Brady's opinion dealing with social interactions. But, as Plaintiff points out, Dr. Brady also found "moderate impairments in her ability to maintain concentration and her ability to withstand normal workplace stress." (ECF No. 10, PageID.23) (citing PageID.576). The ALJ does not explain why Plaintiff's ability to interact with treatment providers is responsive to Dr. Brady's other conclusions. Nor does the ALJ address Dr. Brady's diagnosis of depression

---

[5] The ALJ also writes, "as detailed above (Ex.5F); this opinion is not consistent with or supported by the medical and other evidence of record." (PageID.45). But this assertion appears circular. "Exhibit 5F" is Dr. Brady's opinion, and a page earlier in his decision the ALJ merely recounted the opinion's contents, without analyzing its consistency or supportability.

(PageID.576), which appears throughout Plaintiff's medical record (*e.g.*, PageID.508, 510-11 ("Affect is flat," "Behavior is withdrawn."), 526 ("tearful and has somewhat of a flat affect"), 539, 540, 580, 584 ("Anxiety and Depression: Of note patient has a significant mental health history which is poorly controlled"), 641 (diagnosing "Major Depressive Disorder, recurrent, in partial remission")), and which Plaintiff attests to not being well controlled by her medication.  (PageID.64, 310, 508, 606, 610, 673).  While the ALJ lists depression as one of Plaintiff's severe impairments, he does not explain whether Dr. Brady's findings regarding her depression are supported by and consistent with the record, nor how that severe impairment bears on her ability to interact with others.  This is an important issue to resolve given Dr. Brady's finding about Plaintiff's ability to manage workplace stress, as he specifically noted that her "distress could affect her interpersonal relationships in the workplace," that "[a]s a result of her emotional state she may often be distracted and her effectiveness and performance will likely be limited and slowed," and that Plaintiff reported quitting her last job due to it being "too stressful for her." (PageID.528, 576).

In short, the ALJ's single sentence regarding Plaintiff's ability to interact with treatment providers – which interactions occur in a unique and controlled setting that in many respects is unlike the workplace – is not responsive to much of Dr. Brady's opinion, and does not constitute substantial evidence in support of the ALJ's persuasiveness finding.[6]

---

[6] The Court notes that the regulations explain that a claimant's ability to "interact with others . . . refers to the abilities to relate to and work with supervisors, co-workers, and the public. Examples

10

As to supportability, the ALJ does not identify what in Dr. Brady's opinion fails to support his conclusions.  Earlier in the RFC, the ALJ summarized Dr. Brady's objective findings, but gave no indication whether the evidence he cites is in support of or contrary to Dr. Brady's conclusions.  The connection between the objective evidence and Dr. Brady's conclusions is the job of the ALJ, not the Court.  *Hargett*, 964 F.3d at 552 (6th Cir. 2020) ("An ALJ may not summarily discount a treating-source opinion as not well-supported by objective findings or being inconsistent with the record without identifying and explaining how the substantial evidence is purportedly inconsistent with the treating-source opinion."); *Jacob B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-617, 2022 WL 130761, at *8 (S.D. Ohio Jan. 14, 2022) ("In the absence of a sufficient explanation of supportability and consistency with the record as a whole, the Court cannot conclude that the ALJ's consideration of Dr. Rush's opinion is supported by substantial evidence.").  Without explaining what of Dr. Brady's objective evidence undermines his conclusion, "the Court cannot discern whether the ALJ discounted or overlooked the evidence," including "contrary lines of evidence."  *White v. Comm'r of Soc. Sec.,* No. 1:20-CV-00588-JDG, 2021 WL 858662, at *20 (N.D. Ohio Mar. 8, 2021).

The only evidence the Commissioner references to connect the ALJ's supportability and consistency analysis (*i.e.*, that Plaintiff "interact[ed] appropriately with treatment

---

include: cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness."  20 C.F.R. § Pt. 404, Subpt. P, App. 1.

11

providers") with his discussion of Dr. Brady's evidence is that the ALJ wrote that Dr. Brady found Plaintiff's "mood was depressed, but her mannerisms were cooperative." (PageID.44). However, this cannot sustain a supportability and consistency analysis, given that much of the ALJ's summary of Dr. Brady's findings just as easily appears to support a finding that his opinion is persuasive. For example, in the sentence prior, the ALJ wrote that Plaintiff "reported being anxious and fearful most of the time, waking periodically through the night with fears and worries, struggling with overwhelming anxiety without clear trigger, inability to focus or get anything accomplished, and having feelings of worthlessness." (PageID.44). The ALJ also wrote that the Plaintiff "was not able to perform serial seven's or three's and only correctly calculated one single-digit math problem." (PageID.44). Without any analysis as to why Plaintiff's "cooperative" "mannerisms" merited discounting Dr. Brady's other findings, the Court simply cannot find that this aspect of the ALJ's decision is supported by substantial evidence. If Plaintiff's display of "cooperative" "mannerisms" during her examination with Dr. Brady was sufficient to find his opinion unpersuasive, then the ALJ must explain his reasoning. Without expressing a view on whether the ALJ might supportably reach the same conclusion on remand, the explanation provided simply "is too sparse to allow meaningful, judicial review." *Tina P. v. Comm'r of Soc. Sec.*, 2024 WL 1660527, at *14 (E.D. Mich. Apr. 17, 2024).

As to consistency, the ALJ's decision suffers from the same problem. The ALJ does not cite any of Plaintiff's treatment records, let alone explain the connection between treatment records that show positive patient interaction and Dr. Brady's conclusions.

12

Moreover, as Plaintiff points out, there are treatment records that support Dr. Brady's opinion, which the ALJ refers to elsewhere.  For example, the ALJ refers to the May 6, 2021 Emergency Room visit where Plaintiff reported that "she has been having a really difficult time at work and had a bad encounter with her assistant manager" and "has been having anger issues lately and [] she is taking out all her frustration on her girlfriend." (PageID.508, 43).  During that visit, as noted by the ALJ, the medical provider wrote that Plaintiff's "[a]ffect is flat."  (PageID.510, 43).  While the Court recognizes that this particular record also indicates that Plaintiff was "alert and oriented to person, place, and time" with "normal" "[a]ttention and perception" (PageID.510), and that this treatment record is similar to some others in which the medical providers both note concerns for Plaintiff's "depression and anxiety" while also noting that "eye contact is appropriate" and "[p]atient's attitude toward the examiner is cooperative" (*e.g.,* PageID.634-36), the ALJ's curt explanation for finding Dr. Brady's opinion unpersuasive, namely that Plaintiff could "interact appropriately with treatment providers and examiners, making good eye contact and behaving cooperatively" is simply insufficient as it fails to meaningfully weigh the competing evidence in the first instance.  *See, e.g., James A. M. v. Comm'r of Soc. Sec.*, No. 22-12334, 2024 WL 1224402, at *3 (E.D. Mich. Mar. 21, 2024). (ALJ "has the obligation in the first instance to show his or her work").[7]

---

[7] To the extent that a review of the record shows additional evidence that conflicts with Dr. Brady's salient opinion, the Court notes that the existence of substantial evidence alone does not excuse the ALJ's failure to provide a sufficient rationale for the reviewing court to assess. *See Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 907-08 (E.D. Mich. 2021) ("Both the Commissioner and the magistrate judge described other evidence in the administrative record that could furnish substantial evidence for a nondisability finding and support for rejecting the physician's opinions.

The Commissioner urges the Court to "recogniz[e] that the ALJ's decision should be read as a whole," and that "the evidence referenced by the ALJ in evaluating Dr. Brady's opinion . . . was discussed elsewhere in the decision . . ."  (ECF No. 12, PageID.740). While the general principle cited by the Commissioner is certainly correct, in this case, looking elsewhere in the ALJ's decision still leaves questions.  For example, the ALJ mentioned Dr. Irey's opinion, which he found persuasive.  (PageID.44).  But, while Dr. Irey pointed out several deficiencies in Dr. Brady's opinion, the ALJ did not mention any of them.  Rather, the only specific evidence that the ALJ said supported Dr. Irey's conclusions were Plaintiff's "educational records."  (PageID.44).  Yet, the only "educational records" to which the ALJ refers is a single page of the Plaintiff's high school transcript, which merely shows her high school grades, many of which were failing (9 grades of "E") or near failing (4 grades of "D-").  (PageID.353).  It is not evident why the ALJ believed Plaintiff's high school transcript supported Dr. Irey's conclusions, let alone why Dr. Irey's opinion should be favored over Dr. Brady's opinion.  Moreover, immediately after writing that Dr. Irey's opinion was persuasive, the ALJ included evidence from the record that appears to undermine his conclusion that Dr. Brady's opinion was unpersuasive.  Specifically, the ALJ wrote, "In May 2021, the claimant reported that

The Commissioner . . . outlines a theoretical path that the ALJ could have followed had she properly applied the regulations requiring that she 'explain how [she] considered the supportability and consistency factors for a medical source's opinions.'  That reasoning, however, ignores the mandate of the regulations that guarantees claimants a certain level of process that cannot be discounted by the substantial evidence test alone.  Even if the Court 'were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with [the regulations] as harmless error.").

14

she was having a difficult time at work and had had a bad encounter with the assistant manager; she also reported having anger issues lately and taking it all out on her partner. At that time, the claimant had a flat affect and withdrawn behavior." (PageID.44).  This evidence appears to *support* Dr. Brady's opinion regarding Plaintiff's social limitations. Therefore, even if the ALJ's endorsement of Dr. Irey's opinion could potentially be interpreted as a reason for finding Dr. Brady's opinion unpersuasive, the ALJ didn't give the Court a basis to do so.

Considering earlier aspects of the ALJ's decision sheds no further light on his reasons for finding Dr. Brady's opinion unpersuasive.  The Commissioner urges the Court to use the ALJ's Step III reasoning as part of its supportability and consistency analysis, but even if doing so might generally be appropriate, it doesn't help adequately support the ALJ's decision here.  The Commissioner points out that

> [a]t step three, the ALJ noted that Plaintiff generally presented with normal concentration, except during the consultative examination with Dr. Brady where she was unable to complete serial subtractions or simple math calculations. []  The ALJ also considered that during Dr. Brady's examination Plaintiff recalled information to sufficiently answer general fund of knowledge questions and recalled two out of three words after delay.

(ECF No. 12, PageID.741).

Although the ALJ referenced Dr. Brady's examination to determine Plaintiff's limitations regarding concentration, social interaction, and memory, this only supports that the ALJ found some of Dr. Brady's examination results compelling.  For example, regarding memory, the ALJ reached the same conclusion as Dr. Brady.  Dr. Brady found that Plaintiff's "ability to understand, recall, and complete tasks and expectations does not

15

appear to be significantly impaired." (PageID.576). Likewise, the ALJ found that Plaintiff had only a "mild limitation" regarding "understanding, remembering or applying information" in part because she "recalled information to sufficiently answer general fund of knowledge questions at the consultative examination and she recalled two of three words after delay." (PageID.40). Regarding memory, the ALJ's opinion again appears to align with Dr. Brady's and also relies upon Dr. Brady's exam to support it.

The ALJ's main divergence from Dr. Brady's opinion at Step III occurs when the ALJ discussed Plaintiff's ability to interact with others. The ALJ found that

> [i]n interacting with others, the claimant has a ***moderate*** limitation. The claimant reported significant socially isolative tendencies and that she left her last job due to conflict with others and stress. The claimant has presented with flat affect and withdrawn behavior at times. However, she has been able to maintain appropriate interactions with examiners and treatment providers. During the telephone interview with agency personnel, there were no noticeable deficits. (Ex. 2E-5E, 1F-13F, Hearing Transcript)

(PageID.41).

But even if these observations are considered as part of the ALJ's consistency analysis regarding Dr. Brady's conclusion that Plaintiff had a "marked limitation" in interacting with others, it does not address whether Dr. Brady's evidence supported his conclusion, as required for the supportability analysis. Further, much of the evidence cited by the ALJ appears to support Dr. Brady's conclusion regarding Plaintiff's limited ability to interact with others, including Plaintiff's "significant socially isolative tendencies" and "flat affect and withdrawn behavior." As discussed previously, though, the ALJ failed to meaningfully explain how any of this evidence factored into his decision to find the salient

16

part of Dr. Brady's opinion to be unpersuasive, and the tie between the two is not so apparent that the Court can infer the ALJ's analysis.

Finally, the Commissioner contends that "Plaintiff fails to point to any functional limitations opined by Dr. Brady that the ALJ erred in discounting based on the record." (ECF No. 12, PageID.743).  However, Plaintiff noted that under the applicable regulations, "[a] marked limitation indicates 'functioning in this area independently, appropriately, effectively, and on a sustained basis is *seriously limited*,'" and she argued that "a finding of more restrictive social limitations would have been appropriate, as opposed to the ALJ's current finding that Ms. Stoll could occasionally interact with co-workers and the general public." (ECF No. 13, PageID.757) (citing 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (emphasis added)).  While the Court does not opine as to the proper social interaction limitation in this case, it seems clear that had the ALJ accepted Dr. Brady's "marked" limitation finding in this category, he could also have limited Plaintiff's social interaction to less than "occasionally," and that such a finding may have resulted in a different disposition of Plaintiff's disability claims.

In sum, the Court finds that the ALJ's decision – on a critical aspect of Plaintiff's disability claim – failed to sufficiently explain his finding that Dr. Brady's opinion was "not persuasive."  *Hargett,* 964 F.3d at 552.  Accordingly, the ALJ's decision is not supported by substantial evidence and remand is required.

## III.   CONCLUSION

For the foregoing reasons, the Court finds that the Administrative Law Judge's conclusion that Plaintiff is not disabled is not supported by substantial evidence.  Thus, **IT**

**IS ORDERED** that the Commissioner's Motion for Summary Judgment **(ECF No. 12)** is **DENIED**, Plaintiff's Motion for Summary Judgment **(ECF No. 10)** is **GRANTED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), this case is **REMANDED** for further proceedings consistent with this Opinion and Order.

      **IT IS SO ORDERED**.

Dated: March 2, 2026                            s/David R. Grand

Ann Arbor, Michigan                       DAVID R. GRAND

                                        United States Magistrate Judge

## CERTIFICATE OF SERVICE

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 2, 2026.

                                    s/Eddrey O. Butts

                                    EDDREY O. BUTTS

                                    Case Manager